UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARIE A. ARNOLD,<br><br>            Plaintiff,<br><br>       v.<br><br>METLIFE AUTO & HOME INSURANCE AGENCY, INC, et al.,<br><br>            Defendants. | Case No. 19-cv-03920-VKD<br><br>**ORDER GRANTING METLIFE GROUP, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 76 |

Defendant MetLife Group, Inc. ("MLG") moves to dismiss the Second Amended Complaint ("SAC") filed by plaintiff Marie Arnold. The Court held a hearing on the motion on February 4, 2020. Upon consideration of the moving and responding papers,[1] as well as the oral arguments presented, the Court grants the motion to dismiss without leave to amend.

## I. BACKGROUND

Ms. Arnold, proceeding *pro se*, originally filed this action against defendants MLG and MetLife Auto & Home Insurance Agency ("MAHIA") asserting claims for negligence and negligent misrepresentation, as well as a claim under the Fourth Amendment of the U.S. Constitution for alleged invasion of privacy. Ms. Arnold says that, at defendants' suggestion, she filed a First Amended Complaint ("FAC"), to include an additional defendant, Brighthouse Life

---

[1] On January 11, 2020, about a week after MLG filed its reply brief, Ms. Arnold filed a "Reply Opposition." Dkt. No. 84. MLG correctly notes that Ms. Arnold's January 11 filing is improper and was filed in violation of Civil Local Rule 7-3(d), which provides that once a reply is filed, and with certain exceptions not applicable here, "no additional memoranda, papers or letters may be filed without prior Court approval . . . ." The Court has nevertheless reviewed Ms. Arnold's January 11 filing and concludes that it does not change the Court's ruling on the present motion to dismiss.

Insurance Company ("Brighthouse").[2] Dkt. No. 19. Additionally, in the FAC, Ms. Arnold asserted claims for fraudulent concealment, negligent misrepresentation, breach of fiduciary duty, and violation of the Fourth Amendment. To the extent any of her clams were untimely, the FAC asserted that tolling applied. *Id*.

The Court previously granted each defendant's Rule 12(b)(6) motion to dismiss the FAC, concluding that Ms. Arnold did not allege sufficient facts to support any plausible claim for relief. Dkt. Nos. 61-63. The Fourth Amendment claim for invasion of privacy was dismissed without leave to amend. Ms. Arnold was given leave to amend the claims for fraudulent concealment, misrepresentation, and breach of fiduciary duty. The Court's orders stated that Ms. Arnold's amended pleading should include allegations clearly identifying the insurance policy at issue, as well the involvement, if any, each defendant had in the events underlying her claims. Additionally, to the extent Ms. Arnold contended that tolling applied to save any untimely claims, the orders stated that her amended pleading should allege facts showing (1) the time and manner of her discovery of her claims and (2) her inability to have discovered her claims earlier, despite reasonable diligence.

Ms. Arnold timely filed her SAC, which now invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332, and asserts claims for negligence and negligent misrepresentation. Dkt. No. 67. The SAC does not reassert claims for breach of fiduciary duty or fraudulent concealment, although Ms. Arnold continues to assert that matters were "fraudulently concealed." *See, e.g., id*. at ECF 5.

According to the SAC, Ms. Arnold "was insured by Metlife Group, Inc[.] life insurance" provided by her former employer, Kaiser Permanente ("Kaiser"). Dkt. No. 67 at ECF 3. This "employee Life insurance coverage[]" reportedly became "effective on the first day of the month following [Ms. Arnold's] date of hire" and ended on the date her employment with Kaiser ended. *Id*. at ECF 3-4. The SAC further alleges that Ms. Arnold would "have the option to convert this coverage to an individual policy within 31 days of the date on which [her] coverage end[ed]." *Id*.

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 10, 11, 35, 36.

at ECF 4. Ms. Arnold's employment with Kaiser reportedly began on December 29, 1999 and ended when she voluntarily terminated her employment on May 2, 2012. *Id*. at ECF 3-4.

Ms. Arnold says that her group insurance policy was a "Metlife Basic Life Insurance plan" that provided "$5,000 in employer-paid Basic Life insurance coverage, with a provision for a Total and Permanent Disability **(T&PD)** Benefit and is bundled with $5,000 yearly total amount $10,000.00[.]" *Id*. at ECF 3. The SAC's allegations indicate that these terms are identified in the "Summary Plan Description" ("SPD") of "a paper copy booklet" Ms. Arnold requested sometime in 2015 during a "phone conversation with a male" in Kaiser's National Human Resources Services Center. *Id*. at ECF 3.

When her employment with Kaiser ended, Ms. Arnold chose to convert her coverage to an individual insurance policy. Dkt. No. 67 at ECF 4. She met with "(Metlife) MAHIA, Brighthouse Agent" Kevin Lonergan. *Id*. Although it is not entirely clear, the SAC suggests that Ms. Arnold and Mr. Lonergan met in May 2012[3] and again in June 2012. *Id*. at ECF 4-5. Ms. Arnold says that she told Mr. Lonergan that "she was suffering from chronic illness of mental disorder" and "postpartum" and "was curious about [the] amount that [was] going to convert into [an] individual policy." *Id*. at ECF 4-5. According to the SAC, "Defendant insisted [on] $50,000 in [a] Metropolitan Life 'Whole term policy' to be signed and agreed on," while Ms. Arnold insisted that the coverage amount "should be more for [the] 12 years and 4 months" that she worked for Kaiser. *Id*. at ECF 5. She further alleges that she "wanted to continue her earned Basic Term life insurance policy service Earned," but Mr. Lonergan reportedly told her to "forget about it" and allegedly "induce[d] [Ms. Arnold] into [a] Metlife, MAHIA, Brighthouse 'whole term policy' on June 14, 2012." *Id*. Based on papers appended to the SAC, the individual policy in question appears to be a "Promise Whole Life" plan, Policy Number 21216479 UT previously referenced in Ms Arnold's FAC. *See* Dkt. No. 19 at ECF 11; Dkt. No. 67 at ECF 32.

Ms. Arnold now says that Mr. Lonergan "committed negligence on her policy contract"

---

[3] Although the SAC seems to indicate that Ms. Arnold met with Mr. Lonergan on May 2, 2019, the Court assumes that the 2019 date is a typographical error insofar as it is inconsistent with other allegations in the SAC.

3

and "did not disclose the true face amount that [she] was entitled to convert from her former employer Metlife Group, Inc. Basic Term life Insurance." Dkt. No. 67 at ECF 5. Here, Ms. Arnold alleges that after finding the SPD documents in her garage, and "understanding legal rights," she "discovered that it was more money and entitled offered benefits to life insurance." *Id*. Specifically, Ms. Arnold claims that, based on her 12 years and 4 months of service with Kaiser, she was "entitled [to] at least $120,000.00 and . . . [a] Total and Permanent Disability life insurance **(TP&D)** payout." *Id*. The SAC does not say when or how Ms. Arnold reportedly found the SPD documents in her garage or gained an "understanding" of her legal rights.

Ms. Arnold further alleges that during two phone calls in March and April 2017, "Defendant (Metlife), MAHIA[,] Brighthouse employee[s]" made negligent misrepresentations by "conceal[ing] facts about whole life [i]nsurance protects employee in events of early accident, chronic illness or disability and take loan before age 65 and provided cash value with penalties surrender charges or lump sum withdrawal." Dkt. No. 67 at ECF 6, 11. On April 7, 2017, Ms. Arnold reportedly spoke by telephone with Ms. Dorotayo of a Customer Solution Center and "requested a copy of original policy booklet, and copy payments, reinstate[ment of] her policy," and "to file a claim, cash value withdrawal, take a loan against [her] policy or sell [her] policy." *Id*. at ECF 5-6, 11. Ms. Dorotayo allegedly "sen[t] a copy of [the] acknowledgement of Insurance [that Ms. Arnold] requested," showing a "Whole Term Policy" with a policy date of June 14, 2012 and "Face amount of insurance $50,000." *Id*. at ECF 6. Ms. Dorotayo reportedly also transferred Ms. Arnold's phone call to Ms. Mason, who is identified as the "Director Remittance Reconciliation Unit." *Id*. at ECF 11. Referencing a prior phone call that reportedly occurred on March 31, 2017, the SAC alleges that Ms. Arnold "requested to reinstate her claim and file a 'withdrawal' to take a loan . . . .," and Ms. Mason allegedly "committed negligent misrepresent[ation] by stating [that Ms. Arnold was] unable to reinstate and denied [her request] to file a claim." *Id*. Additionally, Ms. Arnold says that her claim "is still under her Metropolitan Life Insurance Company [and] not Brighthouse," and that it is "their fault for misleading information that [she] receive[d] in [the] mail." *Id*. at ECF 11. Here, the SAC refers to a March 31, 2017 letter from Brighthouse stating that Ms. Arnold's individual policy lapsed in June 2013

4

for nonpayment of premiums and could not be reinstated. *Id*. at ECF 11, 34.

The SAC further alleges that for any untimely claims, tolling applies under various doctrines due to Ms. Arnold's claimed mental health issues and because she allegedly did not realize defendants did anything wrong until she found the SPD documents in her garage, or until the March and April 2017 phone calls when her requests to reinstate her individual policy and to file a claim reportedly were denied.

MLG moves to dismiss the SAC for failure to state a claim for relief, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. MLG argues that the SAC still does not allege sufficient facts demonstrating that MLG had any involvement in the events underlying her claims, or that Ms. Arnold has a plausible claim for relief. Alternatively, MLG contends that Ms. Arnold's claims are untimely and that tolling does not apply to save her claims.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to

5

draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at 678.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).[4]

## III. DISCUSSION

### A. Negligence

#### 1. The SAC does not state a plausible claim for relief.

In California, negligence claims require the following elements: (1) a legal duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) injury to the plaintiff resulting from the breach. *See generally Steinle v. United States*, No. 16-cv-02859-JCS, 2020 WL 60204, at *3 (N.D. Cal. Jan. 6, 2020) (quoting *Carrera v. Maurice J. Sopp & Son*, 177 Cal. App. 4th 366, 377 (2009)).

Here, Ms. Arnold says that Mr. Lonergan "failed to disclose details explaining the features of various policies, analyze clients current insurance polic[i]es, suggest additions or changes and help policyholder settle claims." Dkt. No. 67 at ECF 8. The specific focus of her claim, however, is that Mr. Lonergan allegedly "failed his duty to disclose the 'true face amount' of Metlife Group, Inc. policy (Basic Life Term Insurance) [of] at least $120,000 which [Ms. Arnold] had the option[] to convert into [an] 'individual plan.'" *Id*. Emphasizing that she "explain[ed] to [Mr. Lonergan] her situation[] about entitlement for claim disability payout," Ms. Arnold says that Mr. Lonergan "just ignored [her] demands." *Id*. Ms. Arnold reportedly "felt uncertain but relied on [Mr. Lonergan's] sales talk" in signing the individual "Whole Term Policy" with a face amount of

---

[4] MLG requests that the Court take judicial notice of materials outside the pleadings or to otherwise consider those matters because they are referenced in the complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1003 (9th Cir. 2018) (discussing judicial notice under Fed. R. Evid. 201 and the incorporation by reference doctrine). For the reasons discussed below, the Court concludes that it is unnecessary to do so. Even considering the SAC and all of the materials Ms. Arnold has appended to it, Ms. Arnold fails to state a plausible claim for relief. Accordingly, MLG's request for consideration of matters outside the pleadings is denied as moot.

insurance of $50,000. *Id*.

Ms. Arnold's alleged injury, however, appears to be based on an unfounded premise. She contends that the Kaiser group policy provided "$5,000 in employer-paid Basic Life insurance coverage, with a provision for a Total and Permanent Disability **(T&PD)** Benefit and is bundled with $5,000 yearly total amount $10,000.00[.]" Dkt. No. 67 at ECF 3. Here, the SAC relies entirely on text from a "Basic Life Insurance" section in the appended documents, which Ms. Arnold says come from the SPD she received from Kaiser in 2015. Even assuming that those documents describe the terms of the applicable policy in effect during Ms. Arnold's period of employment with Kaiser, they do not support her claim. And, at the motion hearing, Ms. Arnold acknowledged that she may have misread the subject documents. What the cited portion of the documents actually says is:

> Your Employee Life Insurance plan provides you with $5,000 in employer-paid Basic Life insurance coverage, with a provision for a Total and Permanent Disability (T&PD) benefit, and is bundled with $5,000 *in additional benefits for Accidental Death and Dismemberment (AD&D)*.

Dkt. No. 67 at ECF 22 (emphasis added). This language indicates that the Kaiser group life insurance coverage was $5,000. The SPD further references $5,000 in benefits for AD&D insurance, which "provides additional income protection for you in case of injury or death resulting from an accident." *Id*. at ECF 23. There is no indication in the record that AD&D coverage or benefits have any relevance to the present action. Nor is there any indication that the Kaiser group plan provided for a yearly sum of $10,000 multiplied by Ms. Arnold's years of employment, as Ms. Arnold contends.

There is also no apparent basis for Ms. Arnold's claim that the Kaiser group policy entitled her to a Total and Permanent Disability ("T&PD") coverage or payout for every year she worked at Kaiser. In order to qualify for T&PD, the SPD provides that a claimant must:

- "Be covered by employer-paid life insurance at the time of your disability."
- "Be totally and permanently disabled, as determined by MetLife, based on the terms of the plan. **Total and Permanent Disability** means that because of a sickness or injury you can never again be expected to do your job; you cannot do any other job for which

7

1   you are fit by your education, your training, or your experience; and you cannot ever
    again be expected to do any work at all for wage or profit."

- Submit a claim form no sooner than six months and no later than 12 months after the
  start of your disability.

Dkt. No. 67 at ECF 27. To the extent Ms. Arnold's pleadings suggest that she was entitled to TP&D benefits due to a mental disability, MLG correctly notes that Ms. Arnold's prior pleadings in the present action suggest that her alleged mental disability began around 2006. Dkt. No. 1 at ECF 4; Dkt. No. 19 at ECF 2. There is no indication that she timely submitted a claim for TP&D benefits, if at all. Moreover, the SPD states that for claimants who qualify, "the amount of [their] monthly T&PD benefit will be $18.00 per $1,000 of life insurance coverage. The maximum benefit is $19,000." Dkt. No. 67 at ECF 23. The SPD further provides: "If you are under age 61 when you become eligible for T&PD benefits, your benefit will be paid out in monthly installments for up to 60 months." *Id*.

In sum, the SPD documents appended to the SAC and upon which Ms. Arnold bases her allegations, do not support a plausible claim that she was entitled to convert at least $120,000 of Kaiser group coverage to an individual plan or to receive a T&PD payout. As such, there is no plausible basis for her claim that Mr. Lonergan negligently failed to disclose the "true face amount" of her insurance or that Ms. Arnold suffered any resulting injury.

### 2. The negligence claim is untimely and no tolling applies.

Even if the SAC stated a plausible claim for negligence, any such claim would be untimely, and Ms. Arnold has not alleged sufficient facts to justify tolling of the applicable statute of limitations. In California, a claim for negligence, including for professional negligence, has a two-year statute of limitations. Cal. C.C.P. § 339; *Fanucci v. Allstate Ins. Co.*, 638 F. Supp. 2d 1125, 1133 n.5 (N.D. Cal. 2009); *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Assocs., Inc.*, 115 Cal. App. 4th 1145, 1154 (2004). According to the SAC, Mr. Longergan procured Ms. Arnold's individual policy with an alleged incorrect amount of insurance in June 2012. The present lawsuit was filed over seven years later in July 2019.

In the SAC, Ms. Arnold contends she is entitled to tolling under the discovery rule, as well

as California Code of Civil Procedure § 352. Additionally, as noted above, the SAC seems to allege that tolling applies because Ms. Arnold claims that information was "fraudulently concealed" from her.

### a. The discovery rule

The "discovery rule" is an exception to the general rule of accrual of a claim for relief and "assumes that all conditions of accrual of the action—including harm—exist, but nevertheless postpones commencement of the limitation period until the plaintiff discovers or should have discovered all facts essential to his cause of action." *Camsi IV v. Hunter Tech. Corp.*, 230 Cal.App.3d 1525, 1536 (1991) (quotations and citations omitted). That is, the applicable limitations period does not begin to run until "plaintiff either (1) actually discovered [her] injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence." *Id*. "The rule is based on the notion that statutes of limitations are intended to run against those who fail to exercise reasonable care in the protection and enforcement of their rights." *Id*. (quotations and citations omitted). "[T]herefore, those statutes should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before [s]he could reasonably be expected to discover its existence." *Id*. To invoke the discovery rule, a plaintiff must establish facts showing (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. *Id*.

Ms. Arnold alleges that after finding the SPD documents in her garage, and after "understanding legal rights," she discovered that she was entitled to "more money" and "offered benefits to life insurance." Dkt. No. 67 at ECF 5. Even assuming that the SAC states a plausible claim for relief (it does not), Ms. Arnold fails to allege facts explaining the time and manner of her discovery or why, despite having the SPD documents in her possession since at least 2015, she was unable to make an earlier discovery despite reasonable diligence. While the SAC suggests that Ms. Arnold did not "understand[] [her] legal rights," ignorance of the law, standing alone, does not justify tolling. *See Theodule v. Blue Mercury*, No. 17-cv-05581-DMR, 2018 WL 4110555, at *5 (N.D. Cal. Aug. 29, 2018) (stating that "ignorance of the law due to [the plaintiff's] *pro se* status is not a basis for equitable tolling.").

9

#### b. Fraudulent concealment

Relatedly, Ms. Arnold suggests that the statute of limitations should be tolled because matters were fraudulently concealed from her. Dkt. No. 67 at ECF 5. "'The doctrine of fraudulent concealment tolls the statute of limitations where a defendant, through deceptive conduct, has caused a claim to grow stale.'" *Yetter v. Ford Motor Co.*, — F. Supp. 3d —, No. 19-cv-00877-LHK, 2019 WL 7020348, at *7 (N.D. Cal. Dec. 20, 2019) (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013)). "In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (1974). "In urging lack of means of obtaining knowledge, it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date." *Id*.

The SAC fails to plead any facts establishing that Mr. Lonergan engaged in conduct resulting in any injury to Ms. Arnold, much less any acts by him that would have prevented Ms. Arnold from discovering the alleged basis for her claim. In any event, for the reasons discussed above, this order finds that the SAC does not allege sufficient facts concerning the time and manner of Ms. Arnold's discovery of her claim or her diligent investigation.

#### c. California Code of Civil Procedure § 352

Section 352 of the California Code of Civil Procedure provides that if a plaintiff lacks "the legal capacity to make decisions" at the time her claim accrued, the time during which the plaintiff lacks such legal capacity is tolled, and tolling only lasts until the plaintiff regains capacity. Cal. C.C.P. § 352(a). Under section 352, a person suffers from "mental derangement" sufficient to toll the statute of limitations if she is "incapable of caring for [her] property or transacting business or understanding the nature or effects of [her] acts." *Hsu v. Mt. Zion Hospital*, 259 Cal. App. 2d 562, 571 (1968); *accord Alcott Rehab. Hosp. v. Super. Ct.*, 93 Cal. App. 4th 94, 101 (2001). "Even a person 'adjudged mentally ill' *for commitment by a court* 'may nevertheless be capable of transacting business and carrying out h[er] affairs.'" *Estate of Stern v. Tuscan Retreat, Inc.*, 725

Fed. App'x 581, 522 (9th Cir. 2018) (quoting *Hsu*, 259 Cal. App. 2d at 573). Ms. Arnold does not allege any facts demonstrating that at the time her claim reportedly accrued, she lacked the legal capacity to make decisions within the meaning of section 352. Although the SAC states that when she obtained her individual insurance policy through Mr. Lonergan, Ms. Arnold "was suffering from chronic illness of mental disorder" and "postpartum," there are no allegations suggesting that she was incapable of caring for her property or otherwise carrying out her affairs. To the contrary, the SAC indicates that Ms. Arnold was able to communicate with Kaiser's human resources representatives, make decisions about obtaining an individual insurance policy, meet with Mr. Lonergan and "explain her situation," and inquire about the amount of coverage under an individual policy. Dkt. No. 67 at ECF 4-5.

For these reasons, MLG's motion to dismiss Ms. Arnold's negligence claim is granted.

### B. Negligent Misrepresentation

"Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986). MLG contends that Ms. Arnold's claim for negligent misrepresentation is a species of fraud subject to Rule 9(b), such that the SAC "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).[5] However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id*. "A pleading is sufficient under [R]ule 9(b) if it identifies the

---

[5] A claim for negligent misrepresentation has either a two-year or three-year statute of limitations, depending on whether the essence of the claim is negligence or fraud. *Johnston v. Covidien, LP*, No. C19-01419 WHA, 2019 WL 2410720, at *3 (N.D. Cal. June 7, 2019) (citing *Fanucci*, 638 F. Supp. 2d at 1133 n.5). Citing *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1054 (9th Cir. 2008), MLG contends that Ms. Arnold's claim for negligent misrepresentation is barred by a two-year limitations period. *Platt*, however, cites to *Ventura Cty. Nat'l Bank v. Macker*, 49 Cal. App. 4th 1528 (1996), which rejected a three-year limitations period where the essence of the negligent misrepresentation claim was negligence, not fraud. Insofar as MLG maintains that Ms. Arnold's negligent misrepresentation claim sounds in fraud, it seems that the three-year limitations period applies, and that her claim is not time-barred. Even so, for the reasons discussed above, the SAC fails to allege sufficient facts supporting a plausible claim for relief.

11

circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations and citation omitted).

To the extent the SAC indicates that this claim is based on allegations that Mr. Lonergan either intentionally or negligently misrepresented or concealed facts in the procurement of Ms. Arnold's individual insurance policy, MLG's motion to dismiss this claim is granted for the same reasons stated above in connection with Ms. Arnold's negligence claim.

As for the allegations concerning alleged misrepresentations by Ms. Dorotayo and Ms. Mason, the SAC alleges that they misled Ms. Arnold during phone calls in March and April 2017 when they reportedly told her that her individual policy could not be reinstated, and denied her request to file a claim, withdraw the cash value of her policy, or take a loan against her policy. Dkt. No. 67 at ECF 11. Although correspondence submitted by Ms. Arnold indicates that various entities have communicated with her about her policy, she insists that she has sued the correct MetLife entities in the present action. Even assuming that is true, however, there is nothing in the SAC that indicates that Ms. Dorotayo or Ms. Mason made any false or misleading statements. Most notably, the March 31, 2017 Brighthouse letter appended to the SAC states that Ms. Arnold's individual policy "provide[d] for reinstatement within three years of lapse," and that the policy "lapsed for nonpayment of premiums on June, 2013." Dkt. No. 67 at ECF 34. There are no allegations in the SAC refuting that Ms. Arnold's policy lapsed for the reason stated in that letter. Although Ms. Arnold now submits a letter indicating that she inquired about reinstating her policy sometime around August 2014 (Dkt. No. 84 at ECF 14), the SAC does not contain allegations suggesting that Ms. Arnold reinstated her policy or even attempted to do all that apparently was required for successful reinstatement. *See id*.

12

Accordingly, the Court concludes that the SAC fails to state a plausible claim for relief based on negligent misrepresentation. MLG's motion to dismiss this claim is granted.

## IV. CONCLUSION

Based on the foregoing, defendant MLG's motion to dismiss the SAC is granted. Ms. Arnold has had several opportunities to plead her claims for relief and to cure deficiencies by amendments previously allowed. There being no indication that Ms. Arnold possesses any facts that would permit her to plead a plausible claim for relief in a further amended pleading, the Court finds that further amendment would be futile. The SAC therefore is dismissed without leave to amend. The Clerk shall enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

Dated: March 5, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge